In the Interest of C.A.B.L.,
a minor Child,

and

Concerning B.E.G., Petitioner–Appellee,

and

N.R.B., Respondent–Appellant.

No. 08CA1899.

Colorado Court of Appeals,
Div. I.

Nov. 12, 2009.

No Appearance for Petitioner–Appellee.

Beltz & West, P.C., W. Thomas Beltz, Daniel A. West, Colorado Springs, Colorado, for Respondent–Appellant.

Opinion by Judge TAUBMAN.

N.R.B. (mother) appeals from (1) a magistrate's orders of November 30, 2005 and November 20, 2007 terminating the parent-child legal relationship with her daughter, C.A.B.L. (child), and decreeing the child's adoption under the kinship adoption provision, § 19–5–203(1)(j), C.R.S.2009, and (2) the district court's orders of June 30, 2006 and July 30, 2008 upholding the magistrate's first order and determining that it lacked jurisdiction to review the second. We issued an order to show cause raising the question of whether we have jurisdiction over this appeal.

We now hold that mother timely appealed the district court's July 30, 2008 order. We further hold, as a matter of first impression in Colorado, that in a kinship adoption appeal governed by C.A.R. 4(a), the unique circumstances doctrine allows this court to accept notices of appeal filed past the seventy-five-day period set forth in that rule. Considering the merits of the appeal, we reverse the judgment and orders of the magistrate and the district court and remand for further proceedings.

## I. Factual and Procedural Background

In 2005, B.E.G., the child's grandmother and then her custodian, filed a petition for kinship adoption of the child. The matter was heard before a magistrate who initially terminated mother's parental rights. After the magistrate advised mother to seek review in the district court, mother did so, but the district court ruled against her on the merits. Mother then appealed to this court. A division of this court dismissed that appeal without prejudice for lack of a final appealable order.

On November 20, 2007, following a contested hearing, the magistrate granted the kinship adoption petition. Mother filed a petition for review in the district court, relying on the magistrate's second advisement that she had fifteen days to do so.

On April 4, 2008, the district court issued an order to show cause requesting that the parties address whether the court had jurisdiction to review the magistrate's order. By order dated July 30, 2008, the court concluded that it did not have jurisdiction because the matter was heard by the magistrate on consent and such matters are to be appealed directly to this court.

On September 10, 2008, mother filed her notice of appeal. After reviewing mother's opening brief and the record on appeal, we issued an order to show cause indicating that

it appeared that a final appealable judgment was entered by the magistrate on November 20, 2007 and that, unless we were to determine that the unique circumstances doctrine applied in this case, we lacked jurisdiction over this appeal. We thus asked mother to address, among other things, whether the unique circumstances doctrine can be applied to allow the filing of a notice of appeal beyond the seventy-fifth day after a judgment becomes final. After reviewing mother's response, we conclude that the unique circumstances doctrine may be applied here, rendering mother's appeal timely.

## II. District Court's July 30, 2008 Order

Mother initially asserts that the district court erred in concluding that it had no jurisdiction to address her petition for review of the magistrate's November 20, 2007 order because (1) any proceeding under the Children's Code heard by a magistrate is subject to district court review, and (2) the law of the case doctrine compelled review because the magistrate and the district court had previously treated the matter as one that did not require consent. We disagree.

### A.

■ As a preliminary matter, we conclude that we have jurisdiction over mother's appeal from the district court's July 30, 2008 order, because mother timely appealed from that order pursuant to C.A.R. 4(a).

Turning to the merits of this portion of mother's appeal, we note that the district court here had original jurisdiction to terminate parental rights and to issue adoption orders, including kinship adoption proceedings. §§ 19–1–104(1)(d), (g), 19–5–203(1)(j), C.R.S.2009; *In re C.A.O.*, 192 P.3d 508, 510 (Colo.App.2008). Because it had such jurisdiction, it was authorized to appoint a magistrate to hear those proceedings. § 19–1–108(1), C.R.S.2009 (authorizing court to appoint one or more magistrates to hear any case or matter under the court's subject matter jurisdiction, with exceptions not applicable here).

Pursuant to C.R.M. 6(d), consent to proceeding before a magistrate in any juvenile matter is required as set forth in C.R.M. 3(f)(1). Under C.R.M. 3(f)(1)(A)(i)-(ii), a party is deemed to have consented to proceeding before a magistrate when the party affirmatively consents in writing or on the record, or does not file a written objection within fifteen days after receiving notice of the referral, setting, or hearing of a proceeding before the magistrate.

■ Here, the magistrate advised mother on the record of her right to transfer the matter to a district court judge, without explaining the implications of the decision, and mother expressly chose to remain before the magistrate. Accordingly, mother consented to proceeding before the magistrate. Thus, review of the magistrate's orders was to be taken pursuant to C.R.M. 7(b), which provides, in relevant part:

> Any order or judgment entered with consent of the parties in a proceeding in which such consent is necessary is not subject to review under Rule 7(a) [providing for petitions for review in the district court], but shall be appealed pursuant to the Colorado Rules of Appellate Procedure in the same manner as an order or judgment of a district court.

In light of the foregoing, although the magistrate may have believed the matter was nonconsensual, requiring district court review, and although the district court had previously reviewed the magistrate's November 30, 2005 order on the merits without objection, the magistrate could not confer nonconsensual status on a consensual proceeding, nor could the district court exercise jurisdiction where it had none. *See Olson v. Hillside Cmty. Church SBC*, 124 P.3d 874, 878 (Colo.App.2005) (subject matter jurisdiction cannot be conferred by consent); *cf. Soto v. Progressive Mountain Ins. Co.*, 181 P.3d 297, 300 (Colo.App.2007) (the parties' stipulation does not confer appellate court jurisdiction to review an otherwise unreviewable order). Accordingly, the district court correctly concluded that it lacked jurisdiction to hear mother's petition for review of the magistrate's November 20, 2007 order.

## B.

Notwithstanding the foregoing, mother contends that all matters heard by a magistrate under the Children's Code are subject to district court review. We disagree.

Section 19–1–108(5.5), C.R.S.2009, provides for district court review of a magistrate's order under articles 2, 3, 4, and 6 of the Children's Code. This provision, however, does not include district court review of magistrate's orders under article 5, the article at issue here, which addresses kinship adoptions, even though parental rights are terminated. Under settled rules of statutory construction, we conclude that the omission of article 5 from section 19–1–108(5.5) demonstrates the General Assembly's intent that proceedings under that article are not subject to district court review. *See Lunsford v. W. States Life Ins.*, 908 P.2d 79, 84 (Colo. 1995) ("[W]hen the legislature speaks with exactitude, we must construe the statute to mean that the inclusion or specification of a particular set of conditions necessarily excludes others.").

## C.

■ We likewise are not persuaded by mother's argument that the law of the case doctrine required the district court to review the November 20, 2007 order because the magistrate and the district court had previously treated the matter as nonconsensual.

■ The law of the case doctrine recognizes that prior relevant rulings made in the same case are generally to be followed. *In re Bass*, 142 P.3d 1259, 1263 (Colo.2006); *see also In re Marriage of Dunkle*, 194 P.3d 462, 467 (Colo.App.2008) (law of the case doctrine applies to a court's decisions of law and not to its resolution of factual questions). The law of the case doctrine, however, is discretionary when applied to a court's power to reconsider its own prior rulings and neither requires nor encourages courts to follow erroneous judgments. *Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 243 (Colo. 2003). Accordingly, a court may properly decline to apply the doctrine if a previous decision is not legally sound, *id.*, and we

conclude that the district court did not err when it did so here.

■ In any event, the law of the case doctrine may not be used to confer subject matter jurisdiction on the district court. *See Horton v. Suthers*, 43 P.3d 611, 615 (Colo. 2002) (subject matter jurisdiction is not conferred on court by party's view of court's jurisdiction).

For these reasons, the magistrate's November 20, 2007 order was a final judgment, and mother's appeal to this court was ordinarily due within forty-five days of that judgment—January 4, 2008. *See* C.A.R. 4(a); C.R.M. 7(b). It is undisputed that mother did not file her notice of appeal until September 10, 2008, within forty-five days of the district court's July 30, 2008 order of dismissal. Accordingly, we turn to the question of whether we may accept mother's untimely notice of appeal objecting to the magistrate's two orders and the district court's order of June 30, 2006.

## III. Unique Circumstances Doctrine

Mother asserts that we should accept her untimely notice of appeal under the unique circumstances doctrine. We agree.

## A.

■ The timely filing of a notice of appeal is a jurisdictional prerequisite to appellate review. *Estep v. People*, 753 P.2d 1241, 1246 (Colo.1988). C.A.R. 4(a), which governs this appeal, provides that the notice of appeal must be filed with the appellate court within forty-five days from the date the judgment or order from which the party appeals was entered. The appellate court may extend the time for filing the notice of appeal for a period not to exceed thirty additional days if the party can establish excusable neglect, allowing the party up to seventy-five days to file the notice of appeal. *Id.* In general, the appellate court is deprived of jurisdiction once that seventy-five-day period has expired. *See Hillen v. Colo. Comp. Ins. Auth.*, 883 P.2d 586, 587 (Colo.App.1994) ("The filing of a notice of appeal within the time limits established by C.A.R. 4(a) is mandatory and jurisdictional.").

■ In certain limited circumstances, this court may apply the unique circumstances doctrine to extend the deadline for filing a notice of appeal. *People in Interest of A.J.H.*, 134 P.3d 528, 531 (Colo.App.2006). This doctrine, created by the supreme court in *Converse v. Zinke*, 635 P.2d 882, 886 (Colo. 1981), allows an appellate court to grant relief from the operation of mandatory language in applicable rules of procedure when the failure to comply resulted from the party's reliance on an erroneous district court ruling. *P.H. v. People in Interest of S.H.*, 814 P.2d 909, 911 (Colo.1991).[1]

■ The unique circumstances doctrine applies in appropriate cases, although it is "rarely invoked and applies only to an extreme situation." *A.J.H.*, 134 P.3d at 531.

■ The question presented in this case, which appears to be one of first impression in Colorado, is whether the unique circumstances doctrine can be applied to allow the filing of a notice of appeal in a kinship adoption proceeding governed by C.A.R. 4(a) beyond the above-noted seventy-five-day jurisdictional deadline. We hold that it can.

Our supreme court and divisions of this court have permitted the filing of notices of appeal beyond arguably applicable jurisdictional deadlines in criminal cases governed by C.A.R. 4(b), *see, e.g., People v. Baker*, 104 P.3d 893, 895–98 (Colo.2005); *Weason v. Colo. Court of Appeals*, 731 P.2d 736, 737–38 (Colo.1987), and dependency and neglect cases governed by C.A.R. 3.4. *See, e.g., People in Interest of A.J.*, 143 P.3d 1143, 1147 (Colo.App.2006); *A.J.H.*, 134 P.3d at 531–33.

In *Baker*, the supreme court allowed a defendant's appeal to be considered timely under C.A.R. 26(b), even though the defendant filed the notice of appeal in the court of appeals more than fourteen months after the date of his sentencing. The supreme court held that a determination of whether good cause exists depends on an assessment of the totality of the circumstances in each case, including factors such as the potential prejudice to the People from late filing, the interests of judicial economy, and the propriety of requiring the defendant to pursue other remedies. *Baker*, 104 P.3d at 896–97.

Although C.A.R. 26(b) allows an appellate court for good cause upon motion to enlarge the time for, among other things, filing a notice of appeal, it expressly provides that an appellate court "may not enlarge the time for filing a notice of appeal beyond that prescribed in C.A.R. 4(a)." C.A.R. 26(b). While a division of this court focused on this limitation in *A.J.*, 143 P.3d 1143, to permit a late notice of appeal in a dependency and neglect case, in *A.J.H.*, another division of this court similarly allowed a late notice of appeal in a dependency and neglect case without regard to the language in C.A.R. 26(b). Significantly, the *A.J.H.* division noted that the different provisions for appeals for civil cases under C.A.R. 4(a) and dependency and neglect cases under C.A.R. 3.4 "might influence the determination whether the court has the authority to grant an extension for good cause pursuant to C.A.R. 2 or 26(b)." 134 P.3d at 532. However, the division continued, "But it does not affect our analysis regarding the applicability of the unique circumstances exception, which is not rooted either in the excusable neglect extension provisions of C.A.R. 4 or the good cause extension provisions of C.A.R. 2 and 26(b)." *Id.*

Here, as in *A.J.H.*, an order terminating parental rights affects the parent's fundamental liberty interests, and thus the right to appeal such an order is of significant import to the parent. *Id.* at 531 (citing *C.S. v. People*, 83 P.3d 627 (Colo.2004)). Although this case involves a kinship adoption, a termination of mother's parental rights is a prerequisite to the district court's judgment that B.E.G. may adopt the child. *See P.H.*, 814 P.2d at 912 (a parent's fundamental liberty interests are implicated in the determination

---

1. Although the doctrine's ongoing vitality has been questioned, *see, e.g., Robinson v. City of Harvey*, 489 F.3d 864, 871 (7th Cir.2007) (collecting authorities); 16A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Catherine T. Struve, *Federal Practice & Procedure* § 3950.3, at 305–06 (4th ed.2008) (noting that the continued viability of the unique circumstances doctrine is in considerable doubt and stating the doctrine "is, at best, on life support"), our supreme court has not abandoned that doctrine.

of whether to allow an appeal to go forward in a dependency and neglect case).

For these reasons, we hold that the unique circumstances doctrine can be applied to allow the filing of a notice of appeal in a kinship adoption proceeding beyond the seventy-five-day jurisdictional deadline.

### B.

■■■ We now address whether the unique circumstances exception applies here so that we may consider that portion of mother's appeal relating to the magistrate's orders of November 30, 2005 and November 20, 2007 and the district court's order of June 30, 2006. The unique circumstances exception applies "if a party reasonably relies and acts upon an erroneous or misleading statement or ruling by the trial court." *A.J.H.*, 134 P.3d at 531 (quoting *Converse*, 635 P.2d at 886).

■■■ We conclude that the circumstances here are comparable to those in *P.H.* and *A.J.H.* where the courts applied the unique circumstances doctrine to allow the filing of an otherwise untimely notice of appeal. In *P.H.*, the appellant improperly filed a timely motion for extension to file a notice of appeal in the trial court, rather than in the court of appeals. The trial court purportedly granted the motion, and the appellant relied on that act of the trial court. The supreme court held that because appellant's counsel reasonably relied on the trial court's erroneous granting of the appellant's motion for an extension of time for filing a notice of appeal, the court of appeals should have exercised its discretion and accepted the late-filed appeal under the unique circumstances doctrine.

In *A.J.H.*, the division allowed the otherwise late filing of an appeal because of the trial court's equivocal ruling regarding trial counsel's motion to withdraw and appointment of substitute counsel.

In both cases, the divisions concluded that even though the appellant's counsel was somewhat at fault, other circumstances warranted the determination that the otherwise late appeal should be allowed to proceed.

Here, the magistrate twice advised mother and her counsel to appeal her rulings by seeking review within fifteen days in the district court. Indeed, the district court's first order denied mother's petition for review on the merits without suggesting that mother should have appealed directly to the court of appeals. Subsequently, following the magistrate's decision of November 20, 2007, the magistrate again advised mother and her counsel that the decision could be reviewed by filing a petition for review with the district court within fifteen days. Relying on the magistrate's advice, mother filed her petition for review with the district court, which only then determined that it did not have jurisdiction to review the magistrate's order.

While a diligent attorney might have correctly determined that a magistrate's order in a kinship adoption case must be appealed directly to the court of appeals, that conclusion is not immediately apparent from review of the statutes. Section 19–1–108, C.R.S. 2009, does not clearly set forth the procedure for appellate review in kinship adoption cases. Section 19–1–108(5.5), C.R.S.2009, indicates that district court review is required for proceedings under articles 2, 3, 4, and 6 of Title 19. However, no provision of section 19–1–108 states directly that a magistrate's decision in a proceeding under article 5 must be appealed directly to the court of appeals. We also note that this section was amended once in 2006 and twice in 2007. In addition, C.R.M. 7(a) and (b), concerning review of magistrate decisions, are not very helpful either, since those subsections similarly do not specify the procedure for review of magistrate decisions under article 5, including kinship adoptions.

We consider it significant that neither of the magistrate's orders contained the advisement required by C.R.M. 7(b): "in any order or judgment entered in a proceeding in which consent is necessary" the magistrate must include "a written notice that the order or judgment was issued with consent, and that any appeal must be taken pursuant to Rule 7(b)." Had such notice been provided, mother may well have appealed directly to the court of appeals.

In considering the totality of the circumstances, we also conclude, as did the court in *P.H.*, that alternative remedies, such as a malpractice action or an action for ineffective assistance of counsel, *see, e.g., People in Interest of V.M.R.*, 768 P.2d 1268 (Colo.App. 1989), are not viable alternatives. Accordingly, considering the fundamental liberty interest in the parent-child relationship and because of our view that the magistrate's advisements and the lack of notice required by C.R.M. 7(b) contributed to mother's failure to file a timely notice of appeal in the court of appeals, we conclude that mother "should not receive the harsh sanction of losing h[er] right to appeal." *A.J.H.*, 134 P.3d at 533.

Accordingly, we conclude that under the unique circumstances doctrine, mother's notice of appeal must be considered timely. Thus, we turn to the issues she raises on the merits.

IV. Refusal to Allow Expert Testimony

■ Mother contends that the magistrate erred in refusing to allow mother's proffered expert, Janet Benson Jones, a licensed clinical social worker, to testify as an expert at the hearing on the motion to terminate mother's parent-child legal relationship and that the district court erred in concluding the magistrate's error was harmless. We agree.

■ In a kinship adoption proceeding, the court must determine whether termination of parental rights and adoption would be in the best interests of the child, and then consider whether the child is available for adoption because the natural parent failed to provide reasonable support or abandoned the child for a period of one year or more. *See In re R.H.N.*, 710 P.2d 482 (Colo.1985); *see also* § 19–5–203(1)(j), C.R.S.2009 (child is available for adoption when natural parent has abandoned the child for a period of one year or more or has failed without cause to provide reasonable child support for one year or more).

Here, the magistrate agreed with B.E.G. that Jones could not testify as an expert because mother had not provided notice of her intent to call Jones as an expert and because Jones's testimony was inadmissible under section 13–90–107, C.R.S.2009, which prohibits a social worker from testifying regarding knowledge gained during the course of therapy without the consent of the person receiving such therapy.

■ The district court correctly determined that the magistrate erred in both respects. The record shows that mother had provided notice to B.E.G. of her intent to offer Jones as an expert. The record also contains a copy of Jones's proffered home study, which discusses her investigation of mother, the child, and her family, and makes clear that she did not provide therapy to the child.

Nevertheless, the district court concluded that the magistrate's exclusion of Jones's testimony as an expert was harmless because it did not affect the determination regarding mother's failure to pay child support. We agree with mother that the district court misapprehended the nature of Jones's proposed expert testimony on the basis that it was relevant to whether termination of her parental rights was in the best interests of the child.

As the supreme court indicated in *R.H.N.*, the court must first determine whether termination of parental rights and adoption would be in the best interests of the child before determining whether the child is available for adoption because the natural parent failed to provide reasonable support without cause or abandoned the child. Here, Jones's proffered expert testimony did not relate to the issue of child support. Rather, her home study and proffered expert testimony concerned the threshold issue of whether termination of parental rights would be in the best interests of the child.

Although the district court reviewed Jones's home study, which is in the record, it assessed its relevance only with respect to child support and therefore concluded the exclusion of Jones's expert testimony was harmless error.

We conclude that the exclusion of Jones's testimony as an expert was reversible error given the conflicting testimony presented in this case regarding the best interests of the

child. *See Moody v. Corsentino*, 843 P.2d 1355, 1375 (Colo.1993) (under C.R.C.P. 61 and C.A.R. 35(e), a reviewing court must disregard any error that does not affect the substantial rights of a party; a harmless error is one that does not substantially influence the outcome of the case or impair the basic fairness of the trial itself).

Having reviewed Jones's testimony as a lay witness and her home study, which the magistrate did not consider, we conclude that there was a significant difference. Had the magistrate heard Jones's expert testimony, based on her home study, she might have reached a different conclusion with respect to whether it was in the best interests of the child to terminate mother's parental rights. Given mother's liberty interest at stake here, the exclusion of Jones's testimony impaired the basic fairness of the hearing regarding termination of her parental rights. Accordingly, we conclude that the order granting the decree of adoption must be reversed.

 In reversing the decree of adoption, we are mindful that this case was originally filed in 2005. However, as noted above, much of the delay that has occurred resulted from the magistrate's incorrect advisement to mother's counsel regarding the appropriate procedure for review of the termination order and of the later decree of adoption. Significantly, "[p]arents who protest the adoption of their child[ ] must be provided with 'fundamentally fair procedures' because natural parents have 'a fundamental liberty interest in the companionship, care, custody, and management of their child.'" *E.R.S. v. O.D.A.*, 779 P.2d 844, 847 (Colo.1989) (quoting *R.H.N.*, 710 P.2d at 487); *see also Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982).

## V. Judicial Notice of Domestic Relations File

Because we are reversing the magistrate's order granting B.E.G.'s petition for decree of adoption, we need not consider mother's additional arguments raised on appeal, except for one issue likely to arise on remand. Mother contends that the magistrate erred in taking judicial notice of mother's related do-

mestic relations case, including the guardian ad litem's reports.

 Trial courts may take judicial notice of facts not subject to reasonable dispute that are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." CRE 201(b). Further, a court may take judicial notice of its own records and adopt factual findings from a previous case as long as the previous case involved the same parties and the same issue. *Dauwe v. Musante*, 122 P.3d 15, 20 (Colo.App.2004).

 However, a court may not take notice of facts on the issue the parties are litigating. *Mun. Subdistrict v. OXY USA, Inc.*, 990 P.2d 701, 711 (Colo.1999).

 Here, to the extent that the magistrate took judicial notice of the GAL's reports in the dissolution case, which involved issues regarding the best interests of the child and mother's fitness to be a parent, the magistrate erred. Taking such judicial notice was prejudicial to mother because she did not have an opportunity to cross-examine the GAL before the magistrate.

Accordingly, on remand, the magistrate may take judicial notice of pleadings and rulings in the dissolution case, but may not take judicial notice of the GAL's report.

## VI. Other Issues

We also do not address mother's equal protection argument or her contention that B.E.G. failed to follow applicable law in various respects in seeking kinship adoption.

We do not review on appeal issues that were not first raised before the magistrate or the district court. *Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718 (Colo.1992). Because these issues were not raised in the district court and mother has not cited any record references to show that they were, we do not address them.

In conclusion, we hold that under the unique circumstances doctrine, we have jurisdiction to hear mother's appeal of the magis-

trate's two orders and the first order of the district court.

The orders and judgment are reversed. The case is remanded for further proceedings consistent with this opinion.

Judge ROY specially concurs.

Judge GABRIEL concurs in part and dissents in part.

Judge ROY specially concurring.

I join in the opinion of my colleague Daniel M. Taubman. I write separately to express concern as to the structure and application of C.R.M. 7. This rule, in conjunction with C.R.M. 6 and the applicable statutes concerning the role of magistrates, has confused and confounded appellants, particularly pro se appellants.

The rule provides for two routes of review or appeal: (1) review by a district judge if the matter is entered without consent upon application made within fifteen days, C.R.M. 7(a); and (2) appeal to the Court of Appeals if the matter is heard by consent, C.R.M. 7(b). Both C.R.M. 6 and section 19–1–108, C.R.S.2009, identify those matters that require consent and those that do not.

Without going into detail, some domestic relations matters require consent, and some do not, C.R.M. 6(b); the same is true of probate and mental health cases, C.R.M. 6(e); the same is true of juvenile matters, C.R.M. 6(d), and so on with respect to criminal and civil matters. I will briefly discuss juvenile and domestic relations proceedings, which are frequently heard by magistrates.

Dependency and neglect proceedings, which frequently address fundamental rights, are governed by title 19, article 3, C.R.S. 2009. Section 19–1–108 both authorizes and governs the judicial functions of juvenile magistrates. At the outset of juvenile proceedings, the magistrate must advise the parties that they have a right to a hearing before a judge or they can consent to hearings before the magistrate. There is no requirement that they also be advised as to the appellate or review implications of that decision at that time. If the party consents to the magistrate, the manner of review is set forth in section 19–1–108(5), C.R.S.2009, which specifies review by the district court upon request made within fifteen days of the magistrate's order for matters under articles 2, 4, and 6 of title 19, and upon request made within five days notice for matters under article 3 of title 19. Adoption proceedings, including kinship adoptions, are under article 5 of title 19, and, for no immediately apparent reason, review is in the Court of Appeals. If review is in the Court of Appeals, that review is governed by the Colorado Rules of Appellate Procedure.

With respect to domestic relations cases, the magistrate may, without consent, hear all matters except permanent orders involving property division, maintenance, child support, or allocation of parental responsibilities, which require consent. C.R.M. 6(b)(1)(A), (2). In addition, the magistrate may hear, without consent, motions to modify permanent orders concerning property division, maintenance, child support, or allocation of parental responsibilities. C.R.M. 6(b)(B). Therefore, magistrates are permitted to amend orders without consent; they are not empowered to enter orders in the first place without consent.

C.R.M. 7 was recently amended to require the magistrate to note on his or her written order whether review must be sought under C.R.M. 7(a) or 7(b). Though this amendment has undoubtedly reduced the confusion, it has not eliminated it.

C.R.M. 5(a) contributes to untimely appeals of matters heard by a magistrate without consent, in that, while a magistrate may consider a motion to correct clerical errors under C.R.C.P. 60(a), the magistrate is denied the authority to consider a motion for reconsideration under C.R.C.P. 59(a). C.R.C.P. 59 motions, though not required, are frequently filed in the trial court prior to the initiation of an appeal to the Court of Appeals, and the period for initiating that appeal is tolled while the motion is pending, not to exceed sixty days. C.R.C.P. 59(b), (j), (k).

Though statistics are not available, I do not think I would be wide of the mark in stating that a significant, and perhaps unac-

ceptable, number of juvenile and domestic relations cases are dismissed on appeal to this court because: (1) district court review was required but not sought; (2) district court review was sought but not authorized; or (3) a post-trial motion under C.R.C.P. 59(a) was improvidently filed with the magistrate. Undoubtedly, as here, some of the dismissed appeals had merit.

In my view, this labyrinth unnecessarily sets traps for the unwary. Pro se litigants are most at risk. However, many of the dismissed cases involved counsel.

This case involves mother's fundamental rights. The doctrine of unique circumstances, as the dissent points out, has all but been abandoned in the federal system and may have a questionable future in state courts. Its use to expand the time within which to file an appeal is discretionary and may be subject to question. When, as here, fundamental rights are implicated, a litigant should not be subjected to a confusing appellate labyrinth and ultimately have to rely on a tenuous and discretionary doctrine in order to vindicate and protect his or her fundamental rights.

Judge GABRIEL concurring in part and dissenting in part.

I fully agree with the majority's conclusions in Part II of its opinion that mother timely appealed from the district court's July 30, 2008 order and that the district court correctly determined that it lacked jurisdiction to address mother's petition for review of the magistrate's November 20, 2007 order. I disagree, however, with the majority's determination that the unique circumstances doctrine allows this court, in an appeal governed by C.A.R. 4(a), to accept notices of appeal filed past the seventy-five-day period set forth in that rule. Accordingly, I do not believe that we have jurisdiction to hear that portion of mother's appeal concerning the magistrate's November 30, 2005 and November 20, 2007 orders or the district court's June 30, 2006 order. I therefore respectfully dissent from Parts III through V of the majority opinion.

Our supreme court and divisions of this court have permitted the filing of notices of appeal beyond arguably applicable jurisdictional deadlines in criminal cases governed by C.A.R. 4(b), *see, e.g., People v. Baker*, 104 P.3d 893, 895–98 (Colo.2005); *Weason v. Colorado Court of Appeals*, 731 P.2d 736, 737–38 (Colo.1987), and dependency and neglect cases governed by C.A.R. 3.4. *See, e.g., People in Interest of A.J.*, 143 P.3d 1143, 1147 (Colo.App.2006); *People in Interest of A.J.H.*, 134 P.3d 528, 531–33 (Colo.App.2006). These decisions, however, are consistent with the Colorado Appellate Rules. Thus, C.A.R. 2 provides:

> In the interest of expediting decision, or for other good cause shown, the appellate court may, *except as otherwise provided in C.A.R. 26(b)*, suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction.

(Emphasis added.)

C.A.R. 26(b), in turn, provides, in relevant part:

> The appellate court for good cause shown may upon motion enlarge the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of such time; *but the court may not enlarge the time for filing a notice of appeal beyond that prescribed in C.A.R. 4(a)*.

(Emphasis added.)

Accordingly, nothing in C.A.R. 26(b) prohibits an appellate court from relying on C.A.R. 2 to enlarge the time for filing a notice of appeal under C.A.R. 4(b), governing criminal appeals, or C.A.R. 3.4, governing appeals in dependency and neglect proceedings. Indeed, C.A.R. 3.4(b)(3) expressly permits an appellate court to extend the time for filing a notice of appeal pursuant to C.A.R. 2 and 26(b). In addition, the case law cited above sets forth the policy reasons for doing so in the specific contexts of criminal and dependency and neglect proceedings.

In contrast, C.A.R. 26(b) expressly prohibits enlarging the time for filing a notice of appeal beyond the seventy-five-day jurisdictional period set forth in C.A.R. 4(a). Moreover, C.A.R. 2, which allows suspension of

the appellate rules in certain circumstances, expressly does not permit suspension of the requirements of C.A.R. 26(b). And neither our supreme court nor any division of this court has held that the unique circumstances doctrine may extend the time in which to file a notice of appeal in a civil case governed by C.A.R. 4(a) beyond seventy-five days.

*P.H. v. People in Interest of S.H.*, 814 P.2d 909, 910 (Colo.1991), on which mother and the majority rely, does not assist mother here because the notice of appeal in that case was filed within seventy-five days. Moreover, in *P.H.*, the supreme court suggested, albeit implicitly, that the unique circumstances doctrine may *not* be used to extend the time for filing a notice of appeal beyond seventy-five days. *Id.* at 911 (noting, in a case applying the unique circumstances doctrine, that although the court of appeals may, in appropriate circumstances, grant a thirty-day extension for filing a notice of appeal under C.A.R. 4(a), "[t]his thirty day extension may not be enlarged").

The most recent federal authorities construing the unique circumstances doctrine are in accord. For example, in *Bowles v. Russell*, 551 U.S. 205, 214, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007), the Supreme Court expressly held that the unique circumstances doctrine may not be applied to authorize an exception to a jurisdictional rule. Specifically, the Court stated, "Today we make clear that the timely filing of a notice of appeal in a civil case is a jurisdictional requirement. Because this Court has no authority to create equitable exceptions to jurisdictional requirements, use of the 'unique circumstances' doctrine is illegitimate." In so holding, the Court overruled *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962), on which our supreme court relied in adopting the unique circumstances exception, and *Thompson v. INS*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (per curiam), "to the extent they purport to authorize an exception to a jurisdictional rule." *Bowles*, 551 U.S. at 214, 127 S.Ct. 2360; *accord Dill v. General American Life Ins. Co.*, 525 F.3d 612, 620 & n. 12 (8th Cir.2008); *cf.* 16A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Catherine T. Struve, *Federal Practice & Procedure* § 3950.3, at 306 (4th ed. 2008) ("[A]ssuming that the [unique circumstances] doctrine survives to some extent, it is presently unclear whether the doctrine would be available at all to an appellant who filed its notice of appeal outside the latest time permitted by [Fed. R.App. P.] 4(a)(5)(C).") (footnote omitted).

I am sympathetic to mother's assertion that she failed to file a timely appeal because her counsel relied on the magistrate's advisement regarding review in the district court and on the district court's review of the magistrate's November 30, 2005 order, particularly given the majority's view that the appeal has merit. Nonetheless, I feel constrained by the applicable case law and appellate rules to conclude that the unique circumstances doctrine may not be used to extend the time for filing the notice of appeal in this civil proceeding beyond the seventy-five-day jurisdictional period.

Accordingly, I would hold that we lack jurisdiction to consider that portion of mother's appeal relating to the magistrate's orders of November 30, 2005 and November 20, 2007 and the district court's order of June 30, 2006.

I recognize, as does the majority, that mother's appeal implicates fundamental liberty interests, a consideration on which the supreme court relied in *P.H.*, 814 P.2d at 912, and on which divisions of this court have relied in allowing untimely notices of appeal in dependency and neglect cases. *A.J.*, 143 P.3d at 1145; *A.J.H.*, 134 P.3d at 531. In each of those cases, however, the matter was either filed within the seventy-five-day jurisdictional period of C.A.R. 4(a) or was subject to C.A.R. 3.4. Here, in contrast, the kinship adoption proceedings at issue were subject to C.A.R. 4(a) and 26(b), and, as discussed above, I am aware of no authority allowing us to exercise jurisdiction in such a case beyond seventy-five days after entry of a final judgment. Moreover, although it may well be that kinship adoption proceedings should be governed by the same rules as dependency and neglect proceedings, given the overlap in the types of issues and fundamental rights involved in both types of cases, currently they are not. Accordingly, I am constrained

to apply C.A.R. 4(a) and 26(b) here, as well as supreme court decisions construing those rules, and those authorities lead me to the conclusion that I would reach in this case.

Even if I were to agree that the unique circumstances doctrine could apply here, however, I do not believe that the doctrine would save mother's untimely notice of appeal. For this reason as well, I respectfully dissent from Parts III through V of the majority opinion.

In its traditional formulation, the unique circumstances doctrine applies "only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done." *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 179, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). This formulation has been construed narrowly, and courts have applied the doctrine only where the district court has given a specific and express assurance that if the party took certain action, the appeal would be timely. *See, e.g., In re Wiersma,* 483 F.3d 933, 940 (9th Cir. 2007) ("Under the doctrine of unique circumstances, a party's untimeliness in appealing an order may be excused if the party relied on the specific assurances of a court that the appeal would be timely."); *In re Kloza,* 222 Fed.Appx. 547, 550, 2007 WL 313513 (9th Cir.2007) ("Unique circumstances will excuse an untimely notice of appeal only if the bankruptcy court explicitly extended the deadline for appeal and if a judicial officer has specifically assured an appellant that the appeal would be timely."); *Feldberg v. Quechee Lakes Corp.,* 463 F.3d 195, 198 (2d Cir.2006) (in order for the unique circumstances doctrine to apply, "there must be a specific, direct, official judicial assurance, on which the appellant relied on [sic] to his detriment, which frustrated his filing of a timely appeal"); *Moore v. South Carolina Labor Bd.,* 100 F.3d 162, 164 (D.C.Cir.1996) ("[T]o qualify for the unique circumstances exception, the judicial action relied upon must include some affirmative assurance which, if proper, would have extended or postponed the deadline for filing the notice of appeal."); *Schwartz v. Pridy,* 94 F.3d 453, 456 (8th

Cir.1996) (unique circumstances doctrine applies "only when the party has relied on a judicial officer's 'specific assurance' that his notice of appeal has been timely filed"); *Willis v. Newsome,* 747 F.2d 605, 606 (11th Cir.1984) ("Courts will permit an appellant to maintain an otherwise untimely appeal in unique circumstances in which the appellant reasonably and in good faith relied upon judicial action that indicated to the appellant that his assertion of his right to appeal would be timely, so long as the judicial action occurred prior to the expiration of the official time period such that the appellant could have given timely notice had he not been lulled into inactivity.").

Courts have found the requisite "specific assurance" lacking when the district court took action that was unauthorized by the rules, even if the appellant relied on such inappropriate action. *See, e.g., Panhorst v. United States,* 241 F.3d 367, 372–73 (4th Cir.2001) (district court's consideration of an untimely motion under Fed.R.Civ.P. 59 was not specific assurance that an act was properly done); *Weitz v. Lovelace Health Sys., Inc.,* 214 F.3d 1175, 1180 (10th Cir.2000) ("[E]ven a manifestly erroneous ruling by the district court did not constitute a specific assurance by the court that the request was properly made."). Moreover, in such circumstances, courts have deemed the appellant's reliance unreasonable, because counsel could have avoided the untimely filing by reviewing and complying with the applicable rules. *See, e.g., Panhorst,* 241 F.3d at 373; *Weitz,* 214 F.3d at 1180.

Here, I cannot conclude that either the magistrate or the district court provided specific and express assurances that if mother filed a petition for review, her appellate rights would be preserved. Indeed, mother points to no place in the record where either the magistrate or the district court addressed her appellate rights at all, nor have I located any such discussion. Rather, the magistrate erroneously advised mother that she had fifteen days to file a petition for review in the district court, and, with respect to the magistrate's November 30, 2005 order, the district court incorrectly reviewed that order. As noted above, however, the fact

that the magistrate and the district court made erroneous statements or took actions that were unauthorized does not constitute the specific assurance required under the unique circumstances doctrine, even if mother relied on those actions.

Similarly, for the reasons set forth above, in my view, mother's reliance on the magistrate's and the district court's errors was not reasonable. Specifically, mother could have avoided her untimely filing by reviewing and complying with the applicable procedural rules, which, I believe, make clear that in the case of magistrate proceedings conducted on consent, any appeal is to be filed directly in this court.

Accordingly, even if the unique circumstances doctrine could apply here, I would conclude that it would not save mother's untimely notice of appeal.

For these reasons, I respectfully concur in part and dissent in part from the majority opinion.