277 P.3d 269

Jason Lanakila CABRAL; the Estate of Joseph Pu Kaikala; Lynda Evadna Kaikala, individually, as Special Administratrix of the Estate of Shawn Kaikala, and as Guardian Ad Litem for minors: Shantel Kaiuola Cabral, and Iokepa John Kaikala; John E. Krause, individually and as Guardian Ad Litem for minors: Kahekili John Krause, Keanu Kaikala Krause, and Kawena Kaikala Krause, Petitioners/Plaintiffs–Appellants,

and

Mark Kale Cabral, Plaintiff–Appellant,

v.

STATE of Hawai'i, Respondent/Defendant/Cross–Claim Plaintiff/Cross–Claim Defendant/Appellee,

and

Joni Marie Scott, Defendant/Cross–Claim Defendant/Cross–Claim Plaintiff.

No. SCWC–28669.

Supreme Court of Hawai'i.

May 9, 2012.

Joy A. San Buenaventura and Peter Van Name Esser, for petitioners/plaintiffs-appellants.

Donna H. Kalama, Deputy Attorney General, for respondent/defendant/cross-claim plaintiff/cross-claim defendant/appellee.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, DUFFY, and McKENNA, JJ.

Opinion of the Court by DUFFY, J.

Petitioners/Plaintiffs–Appellants Jason Lanakila Cabral; Estate of Joseph Pu Kaikala; Lynda Evadna Kaikala, Special Administratrix of the Estate of Shawn Kaikala and GAL for Minors Shantel Kaiuola Cabral, Mark Kale Cabral[1] and Iokepa John Kaikala; John E. Krause, individually and as GAL for Minors Kahekili John Krause, Keanu Kaikala Krause, and Kawena Kaikala Krause (Collectively, Petitioners) filed a timely application for writ of certiorari (Application), urging this court to review the Intermediate Court of Appeals' (ICA) August 11, 2011 judgment on appeal in support of its July 28, 2011 Opinion, which dismissed Petitioners' appeal for lack of jurisdiction. We accepted the Application on December 5, 2011. Oral argument was held on March 15, 2012.

Petitioners' Application presents the following questions:

---

1. On November 11, 2011, Petitioners' counsel submitted a notice to this court explaining that although Mark Kale Cabral is listed as a Petitioner in the caption to the Application, she withdrew from representing him on November 23, 2007. Thus, Mark Kale Cabral is not a Petitioner in the instant appeal.

A. DID THE HAWAII INTERMEDI-
ATE COURT OF APPEALS COMMIT
GRAVE ERROR WHEN IT DISMISSED
AN APPEAL FOR LACK OF JURIS-
DICTION DESPITE PETITIONERS'
REASONABLE RELIANCE ON A
COURT ORDER EXTENDING TIME
TO NOTICE APPEAL UNDER *HRAP*
RULE 4(a)(4)(A)?

B. SHOULD THIS COURT, AS THE
DISSENT PROPOSES, APPLY THE
DOCTRINE OF UNIQUE CIRCUM-
STANCES TO THIS CASE, SINCE PE-
TITIONERS REASONABLY RELIED
UPON THE COURT'S ORDER EX-
TENDING TIME TO NOTICE APPEAL
UNDER *HRAP* RULE 4(a)4(A)?

C. ALTERNATIVELY, SHOULD THIS
COURT FIND THAT RELYING ON AN
INVALID ORDER EXTENDING TIME
DURING THE INITIAL 30–DAY PERI-
OD IS EXCUSABLE NEGLECT, AND
UPHOLD THE SECOND EXTENSION
UNDER *HRAP* RULE 4(a)(4)(B)?

(Emphases in original.)

Based upon the specific, unique factual circumstances of this case, we hold that the ICA erred by concluding that it did not have jurisdiction to hear Petitioners' appeal. As discussed herein, Petitioners in this case relied on a trial court's order that: (1) was issued *prior to* the expiration of the 30–day jurisdictional time limit for filing a notice of appeal; (2) extended the time to file a notice of appeal; and (3) was later deemed invalid. Under these circumstances, we may excuse Petitioners' otherwise untimely notice of appeal. Accordingly, we vacate the ICA's dismissal of Petitioners' appeal for lack of jurisdiction, and remand the case for consideration on the merits.

2. Petitioners consist of Decedent's boyfriend and family members, including her minor children.

3. The Honorable Glenn S. Hara presided.

4. At the time of the circuit court's judgment, as it does now, HRAP Rule 4(a)(1) provided, in part, "[w]hen a civil appeal is permitted by law, the notice of appeal shall be filed within 30 days

## I. *BACKGROUND*

This case arises from a July 20, 2000 fatal car accident that occurred on Highway 11 in the County of Hawai'i, which resulted in the death of Shawn Kaikala (Decedent). Decedent's vehicle was struck by a vehicle driven by Joni Marie Scott (Scott). On October 16, 2001, Petitioners filed a civil complaint against Scott and Respondent/Defendant–Appellee State of Hawai'i (Respondent or State), asserting claims for negligence and wrongful death.[2] Petitioners settled their claims against Scott prior to the commencement of trial.

A seven-day bench trial began on July 10, 2006. On November 1, 2006, the Circuit Court of the Third Circuit (circuit court) entered its Findings of Fact and Conclusions of Law, concluding that Petitioners failed to prove by a preponderance of the evidence that the State was negligent in the "design, construction or maintenance" of Highway 11.[3] The legal cause of the accident and resultant death of Decedent was attributed solely to the negligence of Scott. On April 20, 2007, the circuit court entered judgment in favor of the State and against Petitioners.

### A. *Unique Factual Circumstances*

Ordinarily, and under Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a)(1),[4] Petitioners would have had until May 21, 2007—30 days from the circuit court's April 20, 2007 entry of judgment—to file a timely notice of appeal.[5] At the time relevant to Petitioners' appeal, as it does now, however, HRAP Rule 4(a)(3) provided that "[i]f any party files a timely motion ... to reconsider, ... the time for filing the notice of appeal is extended until 30 days after entry of an order disposing of the motion[.]" HRAP Rule 4(a)(3) (2006). In this case, Petitioners filed a motion for reconsideration on April 30, 2007, which was subsequently denied on June

after entry of the judgment or appealable order." HRAP Rule 4(a)(1) (2006).

5. Because 30 days from the circuit court's April 20, 2007 judgment was Sunday, the 30–day peri-od "extend[ed] until the end of the next day that [was] not a Saturday, Sunday, or a legal holi-day[,]" which happened to be Monday, May 21, 2007 in this case. HRAP Rule 26(a) (2000).

7, 2007. Thus, Petitioners had 30 days from June 7, 2007—the date on which the circuit court filed its order denying Petitioners' motion for reconsideration—to file a timely notice of appeal. The 30–day deadline was July 7, 2007, but because it was a Saturday, Petitioners' deadline to file a notice of appeal became the following Monday, July 9, 2007. *See* HRAP Rule 26(a)(2000). HRAP Rule 4(a)(4)(A) further provides that upon a request for an extension of time made prior to the expiration of the 30–day time period from the court's disposal of a motion for reconsideration,

> [t]he court or agency appealed from, *upon a showing of good cause,* may extend the time for filing a notice of appeal *upon motion* filed within the time prescribed by subsections (a)(1) through (a)(3) of this rule. However, no such extension shall exceed 30 days past such prescribed time. . . . .

HRAP Rule 4(a)(4)(A) (2006) (emphases added).

Three days *before* Petitioners' July 9, 2007 deadline, the parties submitted a written stipulation to extend time to file notice of appeal (Stipulation). Although HRAP Rule 4(a)(4)(A) specifies that a request for an extension of time may be granted *upon motion,* and upon a showing of *good cause,* Petitioners made their request via the Stipulation signed by both counsel for the parties, and neglected to state the underlying basis or need for the extension of time. Despite Petitioners' non-compliance with HRAP Rule 4(a)(4)(A), the circuit court "approved and so ordered" the Stipulation which extended Petitioners' deadline to file a notice of appeal to July 23, 2007.

In an ex-parte motion dated July 18, 2007 (Ex–Parte Motion), Petitioners requested another extension to file their notice of appeal by September 19, 2007. The declaration attached to the Ex–Parte Motion stated the need for another extension: the parties were involved in settlement negotiations and a hearing on a motion to withdraw from representation of one of the Plaintiffs was pending and scheduled for hearing on September 5,

2007. The circuit court did not rule on the Ex–Parte Motion by July 23, 2007, and Petitioners, aware of the circuit court's (presumptively valid) July 23, 2007 extended deadline, filed their notice of appeal on that day.

The Ex–Parte Motion, although dated July 18, 2007, was not filed and granted until September 7, 2007. The Ex–Parte Motion was granted on the basis of "good cause," and Petitioners' deadline to file their notice of appeal was extended by the court to August 8, 2007.[6] By the time the circuit court granted the Ex–Parte Motion, however, Petitioners had already filed their notice of appeal.

Significantly, the above facts reveal that Petitioners' notice of appeal was filed based on reliance on the circuit court's order extending the deadline to July 23, 2007. Notably, the record shows that Petitioners were cognizant of the deadlines for appeal in this case: (1) Petitioners requested an extension three days *prior to* the expiration of the original July 9, 2007 deadline; and (2) when the circuit court had not ruled on the Ex–Parte Motion (seeking another extension) by July 23, 2007—the date of the presumptively valid extended deadline—Petitioners filed what they assumed to be a timely notice of appeal on that date. Thus, had the circuit court not "approved and so ordered" the Stipulation extending Petitioners' deadline to July 23, 2007, Petitioners *could have,* and likely *would have,* filed their notice of appeal within the original June 9, 2007 deadline.

### B. *Appeal to the ICA*

Petitioners filed their opening brief with the ICA on March 14, 2008, challenging the circuit court's findings of fact and conclusions of law regarding the underlying tort claim. Although the State did not challenge the Petitioners' statement regarding appellate jurisdiction, the ICA *sua sponte* raised the issue of jurisdiction and requested supplemental briefings. Both parties filed the requested supplemental briefs.

---

6. The deadline in the circuit court's order granting the Ex–Parte Motion was scratched out and amended by hand to reflect a deadline of August 8, 2007.

In their supplemental brief, the Petitioners argued that the circuit court's order extending the deadline to file a notice of appeal to July 23, 2007 was entitled to great deference. Petitioners argued that their notice of appeal was filed in reliance of the extended July 23, 2007 deadline—the date on which they filed what was assumed to be a timely notice of appeal. Petitioners further contended that any untimeliness of their notice of appeal was cured by the circuit court's September 7, 2007 order granting the Ex–Parte Motion, which extended the deadline to notice the appeal to August 8, 2007.

In its supplemental brief, Respondent argued that the ICA did not have jurisdiction to hear Petitioners' appeal. Respondent admitted that while it stipulated to the extended July 23, 2007 deadline, the present issue was a matter of jurisdiction, which "can neither be agreed to nor waived by the parties." Respondent argued that the Stipulation to extend the filing deadline was improperly granted because Petitioners neglected to state any justification for the extension of time, and thus, did not show "good cause." Respondent also argued that the circuit court's September 7, 2007 order granting Plaintiffs' Ex–Parte Motion could not have cured an untimely notice of appeal. Respondent argued that the Ex–Parte Motion was granted under the inapplicable standard of "good cause," and that under the appropriate "excusable neglect" standard, Petitioners could not have prevailed.

In an Opinion dated July 28, 2011, the majority of the ICA (Judges Fujise and Leonard) agreed with Respondent and concluded that it did not have jurisdiction to hear the appeal. *See generally Cabral v. State*, 126 Hawai'i 92, 94–98, 267 P.3d 676, 678–82 (App.2011). The ICA held that absent a finding of "good cause," it was improper for the circuit court to grant the Stipulation extending Petitioners' deadline to file a notice of appeal to July 23, 2007. *Id.* at 94–97, 267 P.3d at 678–81. Thus, the ICA considered July 9, 2007 as Petitioners' deadline to file the notice of appeal, and Petitioners' subsequent notice of appeal filed on July 23, 2007 was thus untimely.

The ICA majority further concluded that Petitioners' Ex–Parte Motion was improperly granted because: (1) the circuit court erroneously applied the standard of "good cause" rather than "excusable neglect[;]" and (2) under the proper standard, excusable neglect could not be found where the Ex–Parte Motion was based on "the continued efforts at settlement and a pending motion to withdraw." *Id.* at 96–97, 267 P.3d at 680–81. Petitioners' appeal was dismissed for lack of appellate jurisdiction. *Id.* at 97–98, 267 P.3d at 681–82.

In his dissent, Chief Judge Nakamura agreed that the circuit court erroneously approved the Stipulation without a finding of good cause. *Id.* (Nakamura, J., dissenting). The dissent, however, citing case law from the United States Supreme Court, stated that

> in the limited circumstances presented here—where (1) an appellant seeks and obtains a court order extending the filing deadline *before* the expiration of the [filing] deadline; (2) the appellant files the notice of appeal in compliance with the court's order; and (3) there is no showing that the extension prejudiced the appellee—I would recognize an equitable exception to the strict enforcement of time limits for filing a notice of appeal.

*Id.* (emphasis in original). The dissent emphasized that it was reasonable for Petitioners to rely on the circuit court's order issued *prior to* the original deadline, which extended Petitioners' time to file a notice of appeal to July 23, 2007: The appellate court "require[s] and expect[s] parties to comply with court orders. [The appellate court] should permit them to rely on court orders in determining whether the time for filing a notice of appeal has expired." *Id.* at 98–99, 267 P.3d at 682–83. The dissent noted that had the circuit court denied the Stipulation, Petitioners could have, and presumably would have, filed a notice of appeal before the expiration of the original July 9, 2007 deadline. *Id.* at 99, 267 P.3d at 683.

## II. STANDARD OF REVIEW

*A Trial Court's Interpretation of The Rules Governing the Extension of Time*

 Although a trial court's decision to grant an extension of time to file a notice of a

appeal is reviewed under an abuse of discretion standard, its interpretation of the rules governing such extensions is reviewed de novo. *Hall v. Hall*, 95 Hawai'i 318, 318–19, 22 P.3d 965, 965–66 (2001).

## III. *DISCUSSION*

Petitioners contend that their appeal was timely filed and that the case should be decided on its merits because: (1) the circuit court's July 6, 2007 order extending the deadline to file a notice of appeal to July 23, 2007 was valid; and (2) Petitioners' notice of appeal was filed on that date. Petitioners alternatively contend that any defect regarding the July 23, 2007 deadline entitles them to equitable relief under the "unique circumstances" doctrine. We hold that, although the order extending the deadline was not valid, the circumstances of this case warrant application of the equitable "unique circumstances" doctrine as an exception to the strict enforcement of the procedural requirements for extending the time to file a notice of appeal.

### A. *The Circuit Court Erred In Approving The Stipulation And Extending The Deadline To File A Notice Of Appeal.*

■ As discussed earlier herein, HRAP Rule 4 governs the procedure for appeals taken in civil cases.[7] At the time the circuit court's judgment was entered, HRAP Rule 4(a)(1) provided, in part, "[w]hen a civil appeal is permitted by law, the notice of appeal shall be filed within 30 days after entry of the judgment or appealable order." HRAP Rule 4(a)(1) (2006). Pursuant to HRAP Rule 4(a)(3), however, the filing of a notice of appeal may be extended until 30 days after the disposal of a timely motion for reconsideration. HRAP Rule 4(a)(3) (2006). If a request for an extension of time is made prior to the expiration of the 30–day prescribed time period,

[t]he court or agency appealed from, *upon a showing of good cause*, may extend the time for filing a notice of appeal *upon motion* filed within the time prescribed by subsections (a)(1) and (a)(3) of this rule. However, no such extension shall exceed 30 days past such prescribed time.

HRAP Rule 4(a)(4)(A) (2006) (emphases added).

Here, the circuit court's April 20, 2007 judgment in favor of Respondent and dismissing all other claims, constituted an appealable final judgment. *See Jenkins v. Cades Schutte Fleming & Wright*, 76 Hawai'i 115, 119–20, 869 P.2d 1334, 1338–39 (1994). Pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 59(e)[8], Petitioners filed a timely motion for reconsideration on April 30, 2007, which was subsequently denied on June 7, 2007. Thus, Petitioners' deadline to file a notice of appeal became July 7, 2007—30 days from the denial of the motion for reconsideration. HRAP Rule 4(a)(3) (2006). Because July 7, 2007 was a Saturday, however, the deadline to notice the appeal expired on Monday, July 9, 2007.[9] *See* HRAP Rule 26(a).

As noted earlier herein, three days *prior* to the expiration of the July 9, 2007 deadline, the parties submitted the Stipulation to obtain an extension of time. On the same day, the circuit court "approved and so ordered" the Stipulation, which purported to extend the filing deadline to July 23, 2007. Petitioners filed their notice of appeal on July 23, 2007. Thus, it is clear that Petitioners' notice of appeal was timely filed if the circuit court properly "approved and so ordered" the extended July 23, 2007 deadline.

Although Petitioners argue that no rule or case law in this jurisdiction expressly prohibits parties from using a stipulation to request an extension of time, HRAP Rule 4 states the requirements for obtaining such an ex-

---

7. The version of the HRAP Rules effective as of July 1, 2006 is applicable to the instant case.

8. At the time of the circuit court's judgment, as it does now, HRCP Rule 59(e) stated: "Any motion to alter or amend judgment shall be filed no later than 10 days after entry of the judgment." HRCP Rule 59(e) (2000).

9. It appears that the ICA majority neglected to consider HRAP Rule 26(a) because it deemed Saturday, July 7, 2007 as Petitioners' deadline to file a notice of appeal. *See Cabral*, 126 Hawai'i at 94–95, 267 P.3d at 678–79.

tension. We agree with the ICA that HRAP Rule 4(a)(4)(A) clearly states that the court may extend the time for filing a notice of appeal *upon motion,* and *upon a finding of good cause.*

Here, Petitioners filed a stipulation, rather than a motion as required by HRAP Rule 4(a)(4)(A), when they sought an extension of time to file their notice of appeal. *In its entirety,* the Stipulation read as follows:

> Plaintiffs, above-named, by and through their attorney, JOY A. SAN BUENAVEN-TURA; and the State of Hawaii, by and through its attorney, Deputy Attorney General ROBIN KISHI hereby stipulate to the extension of time to file a notice of appeal of two weeks.

There was no mention of any grounds for the extension, much less one demonstrating "good cause," and the court order extending the time for filing the notice of appeal did not include a finding of good cause. Accordingly, the circuit court erred when it ordered the extended July 23, 2007 deadline.

### B. *Petitioners' Appeal Should Be Decided On The Merits.*

Under the specific, unique factual circumstances of this case, Petitioners urge us to adopt the "unique circumstances" doctrine to excuse their untimely notice of appeal. Petitioners contend that they should not be penalized for their reliance on the circuit court's order extending the deadline to file a notice of appeal to July 23, 2007:

> The July 6, 2007 order was granted 3 days before the appeal expired; [] and thus, had the stipulated order been denied, Petitioners would have had an opportunity to file a notice of appeal within the time period granted by this order.

We agree.

### 1. We apply the equitable "unique circumstances" doctrine to the specific, unique factual circumstances of the present case

The United States Supreme Court previously recognized the "unique circumstances" doctrine as an equitable exception to a time limit for filing a notice of appeal under federal law. *See Harris Truck Lines, Inc. v.*

*Cherry Meat Packers, Inc.,* 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962); *see also Thompson v. Immigration & Naturalization Serv.,* 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964). In *Harris,* the appellant requested an extension of time prior to the expiration of an original 30–day deadline to file a notice of appeal. *Harris,* 371 U.S. at 216, 83 S.Ct. 283. The need for an extended deadline was due to "trial counsel's inability to contact the general counsel in order to ask whether to appeal[.]" *Id.* The trial court granted the two week extension, and appellant thereafter filed its notice of appeal after the expiration of the original deadline, but within the extended deadline. *Id.* The Court of Appeals dismissed the appeal for lack of jurisdiction. It held that appellant's notice of appeal was untimely because it had not shown "excusable neglect," which was required by the applicable rule to extend the time for appeal. *Id.* The Supreme Court reversed the Court of Appeals and held as follows:

> In view of the obvious great hardship to a party who relies upon the trial court's finding of 'excusable neglect' prior to the expiration of the 30–day period and then suffers a reversal of the finding, it should be given great deference by the reviewing court. Whatever the proper result as an initial matter on the facts here, the record contains a showing of unique circumstances sufficient that the Court of Appeals ought not to have disturbed the motion judge's ruling.

*Id.* at 217, 83 S.Ct. 283. The dismissal was reversed and the case was remanded with instructions that it be heard on its merits. *Id.*

Similarly, in *Thompson,* the appellant served his post-trial motions, including a motion for a new trial, two days late. 375 U.S. at 384–85, 84 S.Ct. 397. These motions were ultimately denied, but the trial court declared the motions timely. *Id.* at 385, 84 S.Ct. 397. Appellant, relying on the assurance that his motions were made "in ample time," filed his notice of appeal within the prescribed time from the denial of his post-trial motions, but not before the expiration of time from the original entry of judgment. *Id.* The Court of

Appeals dismissed the appeal because it was not filed within the time limits as required under the applicable rules. *Id.*

The Supreme Court vacated the Court of Appeals' judgment and remanded the case to be heard on the merits:

> The instant cause fits squarely within the letter and spirit of Harris. Here, as there, petitioner did an act, which, if properly done, postponed the deadline for the filing of his appeal. Here, as there, the District Court concluded that the act had been properly done. Here, as there, the petitioner relied on the statement of the District Court and filed the appeal within the assumedly new deadline but beyond the old deadline. And here, as there, the Court of Appeals concluded that the District Court had erred and dismissed the appeal.

*Id.* at 387, 84 S.Ct. 397.

In a recent five to four majority opinion by Justice Thomas, the United States Supreme Court overruled the use of the "unique circumstances" doctrine to excuse untimely notices of appeal in civil cases. *See Bowles v. Russell,* 551 U.S. 205, 206–07, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007). In *Bowles,* the petitioner's application for federal habeas corpus relief was denied, and he failed to file a notice of appeal within 30 days after the entry of judgment. *Id.* at 207, 127 S.Ct. 2360. The petitioner moved to reopen the filing period under Federal Rule of Appellate Procedure (FRAP) Rule 4(a)(6) (1998) and 28 U.S.C. § 2107(c) (1991), which allows a trial court to grant a 14–day extension when certain conditions are met. *Id.* The district court granted the motion, but gave the petitioner 17 days to file a notice of appeal, rather than the maximum 14 days as prescribed under FRAP Rule 4(a)(6) and 28 U.S.C. § 2107(c). *Id.* Petitioner filed his notice of appeal within the 17 days allowed by the district court, but after the 14–day period had expired. *Id.* Respondent thereafter moved to dismiss the appeal as untimely. Petitioner argued that his untimeliness should be excused based on his justifiable reliance on the trial court's order. The Court of Appeals held that petitioner's notice of appeal was untimely and that it lacked jurisdiction to hear the case. *Id.* at 207–08, 127 S.Ct. 2360.

In affirming the Court of Appeals' decision, the majority of the Supreme Court clarified the difference between time limit rules that are "jurisdictional" and those that are "claim-processing." *Id.* at 210–12, 127 S.Ct. 2360. The Supreme Court emphasized that only Congress may determine a lower federal court's subject-matter jurisdiction. *Id.* at 211, 127 S.Ct. 2360. It cited *United States v. Curry,* 47 U.S. 106, 113, 6 How. 106, 12 L.Ed. 363 (1848), for the proposition that when appeals are not "prosecuted in the manner directed, within the time limited by the acts of Congress, it must be dismissed for want of jurisdiction." *Bowles,* 551 U.S. at 210, 127 S.Ct. 2360. As such, the Court stated that the rules regarding time constraints that are derived from statutes specifically limiting a court's jurisdiction are considered "jurisdictional." *Id.* at 210–13, 127 S.Ct. 2360. "Claim-processing" rules related to time restrictions, on the other hand, are "court-promulgated" and adopted by the Court for the orderly transaction of business. *Id.* at 211, 127 S.Ct. 2360. Such rules are not derived from statutory time constraints specifically limiting jurisdiction, and can be relaxed at the Court's discretion. *Id.* at 211–13, 127 S.Ct. 2360.

The time constraints in FRAP Rule 4(a)(6) were declared "jurisdictional" because they are set forth by statute in 28 U.S.C. § 2107(c), which limits the amount of time federal district courts can extend the notice of appeal period. *See id.* at 213, 127 S.Ct. 2360. At the time of the petitioner's appeal, FRAP Rule 4(a)(6) read:

> (6) Reopening the Time to File an Appeal. The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:
>
> > (A) the motion is filed within 180 days after the judgment or order is entered or within 7 days after the moving party receives notice of the entry, whichever is earlier;
> >
> > (B) the court finds that the moving party was entitled to notice of the entry of

the judgment or order sought to be appealed but did not receive the notice from the district court or any party within 21 days after entry; and

(C) the court finds that no party would be prejudiced.

FRAP Rule 4(a)(6) (1998). Similarly, at the relevant time period, 28 U.S.C. § 2107(c) read:

(c) the district court may, upon motion filed not later than 30 days after the expiration of the time otherwise set for bringing appeal, extend the time for appeal upon a showing of excusable neglect or good cause. In addition, if the district court finds—

(1) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry, and

(2) that no party would be prejudiced

the district court may, upon motion filed within 180 days after entry of judgment or order or within 7 days after receipt of such notice, whichever is earlier, reopen the time for appeal for a period of 14 days from the date of entry of the order reopening the time for appeal.

28 U.S.C. § 2107(c) (1991). Critical to the Supreme Court's analysis was the fact that the time constraints set forth in FRAP rule 4(a)(6) emanated from 28 U.S.C. § 2107(c). Ultimately, the Supreme Court ruled that the time limits in FRAP Rule 4(a)(6) are "jurisdictional" because it "carries § 2107 into practice." *Bowles*, 551 U.S. at 208, 127 S.Ct. 2360. The Supreme Court majority also reiterated that it has "long and repeatedly held that the time limits for filing a notice of appeal are jurisdictional in nature." *Id.* at 206–07, 127 S.Ct. 2360. Even under "unique circumstances," the majority held, it is without authority to create equitable exceptions to jurisdictional requirements. *Id.* The use of the "unique circumstances" doctrine was rendered "illegitimate." *Id.*

In dissent, Justice Souter, joined by Justices Stevens, Ginsburg, and Breyer, denounced the unfair result of precluding the appeal when petitioner's appeal was filed within the time allowed by the district judge: "It is intolerable for the judicial system to treat people this way, and there is not even a technical justification for this bait and switch." *Id.* at 215, 127 S.Ct. 2360 (Souter, J., dissenting). The dissent distinguished the majority's holding from the Court's "steady stream" of recent unanimous decisions that have retreated from the characterization of certain filing deadlines as "jurisdictional." *Id.* at 219–20, 127 S.Ct. 2360; *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (stating that "time prescriptions, however emphatic, are not properly typed 'jurisdictional[.]' "); *see also Kontrick v. Ryan*, 540 U.S. 443, 445, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (noting that the use of a "jurisdictional" label for "claim processing" rules is inappropriate, and that courts should use the former term to describe the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within the court's adjudicative capacity); *see also Eberhart v. United States*, 546 U.S. 12, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (discussing the basic error of confusing mandatory time limits with jurisdictional limitations). Under that trend, the dissent argued, the time limit at issue should not be viewed as jurisdictional, and the case was entitled to remand for consideration on the merits. *Bowles*, 551 U.S. at 218–19, 223, 127 S.Ct. 2360. The dissent would have recognized the "unique circumstances" doctrine "as it certainly seems reasonable to rely on an order from a federal judge." *Id.* at 220, 223, 127 S.Ct. 2360.

■ Like *Harris* and *Thompson*, this case involves the reliance on a trial court's order that: (1) was issued *prior to* the expiration of an original deadline; (2) extended the time to file a notice of appeal; and (3) was later deemed invalid. Accordingly, we apply the equitable "unique circumstances" doctrine in the circumstances presented here.

We have not previously encountered a situation similar to the facts of the present case. *Enos v. Pac. Transfer & Warehouse, Inc.*, 80 Hawai'i 345, 910 P.2d 116 (1996), although cited in the ICA's Opinion for the proposition that Petitioners were not entitled to an extension of time, is distinguishable. There,

the appellant filed a motion for an extension of time *after* the original deadline had expired. *Id.* at 348, 910 P.2d at 118–19. Consequently, unlike the facts in this case, the appellant could not have relied upon the trial court's extension order in failing to meet the original deadline to appeal. Rather, the facts of this case are identical to *Harris* and *Thompson*, in that Petitioners' request for an extension of time was filed *prior to* the expiration of the original deadline. Had the circuit court denied the Stipulation seeking to obtain the extended July 23, 2007 deadline, Petitioners could have, and presumably would have, filed their notice of appeal within the original July 9, 2007 deadline. *See Cabral*, 126 Hawaiʻi at 99, 267 P.3d at 683 (Nakamura, J., dissenting). In addition, there is no indication that the State was prejudiced, especially in light of the fact that they stipulated to the extended deadline. To punish Petitioners for their reliance on the circuit court's order, which, unbeknownst to them would later be deemed invalid, is unjust: "We require and permit parties to comply with court orders. We should permit them to rely on court orders in determining whether the time for filing a notice of appeal has expired." *Id.* at 98–99, 267 P.3d at 682–83.

2. **Our application of the "unique circumstances" doctrine can be reconciled with the view that a timely notice of appeal is a jurisdictional requirement**

As previously discussed, the relevant time constraint in *Bowles* was statutorily, rather than judicially, created. This was critical to the Supreme Court's majority determination that the time limit to file a notice of appeal was "jurisdictional." The dismissal of petitioner's appeal was affirmed because the Court had no authority to create equitable exceptions to jurisdictional limitations set forth in the statute. *Bowles*, 551 U.S. at 214, 127 S.Ct. 2360. Had the rule setting forth the time limit been adopted "for the orderly transaction of its business[,]" it would have been considered a "claim-processing" rule, capable of being relaxed in the Court's discretion.

In *Bowles*, FRAP Rule 4(a)(6) was deemed purely "jurisdictional" because it carried the requirements of 28 U.S.C. § 2107(c) into practice. *Id.* Similarly, although the time constraints in HRAP Rule 4(a)(4)(A) are set forth by court rule rather than a statute, the authority to set such constraints is derived from HRS § 641–1(c), which states that "[a]n appeal shall be taken in the manner and within the time provided by the rules of court." HRS § 641–1(c) (1993). Moreover, HRAP Rule 26(b) provides, in relevant part, that "no court or judge or justice is authorized to change the jurisdictional requirements contained in [HRAP] Rule 4." HRAP Rule 26(b) (2000). Thus, while we do not dispute that the *time constraints* in HRAP Rule 4(a)(4)(A) are jurisdictional,[10] we consider its requirement that a request for an extension of time be made by motion and for good cause, an aspect of "claim-processing."

At least one other jurisdiction has similarly reconciled the "unique circumstances" doctrine with the view that a timely notice of appeal is a jurisdictional requirement. In *In re C.A.B.L. et. al.*, 221 P.3d 433 (Colo.Ct.App. 2009), the Colorado appellate court applied the "unique circumstances" doctrine to excuse an untimely notice of appeal. *Id.* at 440. There, a minor child's grandmother filed a petition for kinship adoption, and the child's mother (Mother) was divested of her parental rights. *Id.* at 436. Under the applicable state laws, Mother's appeal should have been made directly to the Colorado court of appeals. *Id.* at 437. Nevertheless, the magistrate who initially terminated Mother's parental rights twice erroneously advised her to seek review in the district court. *Id.* at 440. Relying on the magistrate's advice, Mother filed her petition for review with the district court, which ultimately determined that it did not have jurisdiction to hear her appeal. *Id.*

10. Indeed, we have long regarded an untimely notice of appeal as "a jurisdictional defect that can neither be waived by the parties nor disregarded by the court in the exercise of judicial discretion." *Bacon v. Karlin*, 68 Haw. 648, 650, 727 P.2d 1127, 1129 (1986) (quoting *Naki v. Hawaiian Elec. Co.*, 50 Haw. 85, 86, 431 P.2d 943, 944 (1967)) (brackets omitted).

The Colorado court of appeals, although recognizing that "[t]he timely filing of a notice of appeal is a jurisdictional prerequisite to appellate review[,]" noted that in "limited circumstances[,]" it is authorized to "grant relief from the operation of mandatory language in applicable rules of procedure *when the failure to comply resulted from the party's reliance on an erroneous district court ruling.*" *Id.* at 439 (emphasis added). The court invoked the "unique circumstances" doctrine and excused Mother's untimely notice of appeal, despite its acknowledgment that the continuing validity of the doctrine has been called into question.[11] *Id.* at n. 1.

█ Petitioners in this case were similarly following the circuit court's order granting them an extended deadline to file their notice of appeal. We acknowledge that Petitioners were not in compliance with HRAP Rule 4(a)(4)(A) when they filed the Stipulation, rather than a motion, and neglected to show "good cause" for an extended deadline to file their notice of appeal. Nevertheless, we reiterate the distinction between the *time limits* for requesting an extension of time under HRAP Rule 4, versus its *procedure,* the latter of which is not derived from statutory time constraints specifically limiting jurisdiction, and can be relaxed at the Court's discretion. *See Bowles,* 551 U.S. at 211–13, 127 S.Ct. 2360.

Petitioners relied, to their detriment, on the order granting an extended July 23, 2007 deadline, and reasonably believed that the original July 9, 2007 deadline was no longer effective. In light of the circuit court's order, it is not surprising that Petitioners filed their notice of appeal after the expiration of the original deadline, but within the presumptively valid extended deadline. The State, having stipulated to the extended July 23, 2007 deadline, and not challenging appellate jurisdiction until the issue was raised by the ICA, has not been prejudiced. Under the specific, unique factual circumstances of this case, we hold that application of the equitable doctrine of "unique circumstances"

is in the interests of justice and appropriate. Having so decided, we need not reach the issue of whether the Ex–Parte Motion was properly granted.

## IV. *CONCLUSION*

We vacate the ICA's dismissal, and remand the case for consideration on the merits.

---

11. The appellate court noted that the "unique circumstances" doctrine was created by the Colorado Supreme Court in 1981, *In re C.A.B.L.,* 221

P.3d at 439, and that it has not since been abandoned. *Id.* at n. 1.